UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| FULVIO ZERLA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-01140-JES-JEH |
| | ) | |
| STARK COUNTY, ILLINOIS, and | ) | |
| STEVE SLOAN, in his Individual and | ) | |
| Official Capacity | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND OPINION

This Motion comes before the Court on Defendants' Motion to Dismiss (Doc. 13). Plaintiff filed a Response (Doc. 14). For the reasons stated below, the Motion to Dismiss is DENIED.

### BACKGROUND

On April 25, 2019, Plaintiff brought his Complaint pursuant to 42 U.S.C. § 1983.[1] Doc. 1. Plaintiff alleges that Defendants violated his right to freedom of speech while acting under the color of state law. *Id.* at 2. On June 24, 2019, Defendants filed a Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Doc. 13. On July 8, 2019, Plaintiff filed his Response to Defendants' Motion to Dismiss. Doc. 14.

On January 13, 2015, Plaintiff was appointed to the Stark County Board. While on the County Board, Plaintiff had oversight responsibilities over county finances, which included "appropriations for the operations of the Sheriff's department." Doc. 1, p. 3. Plaintiff and other

---

[1] The facts alleged in the Plaintiff's complaint are taken as true for the purposes of resolving this Motion to Dismiss.

1

board members would discuss budget and other policy positions at County Board meetings, at which Plaintiff stressed the importance of county departments staying within their budgets.

Defendant Steve Sloan ("Sloan") became Sheriff of Stark County on December 1, 2016. As Sheriff, Sloan is required to attend Board meetings to keep the peace. In the Spring of 2017, spending in the Sheriff's office was causing a budgetary crisis. Sloan met with Plaintiff and the Board Chairperson to resolve the spending issue. Sloan rejected the suggested changes to his office's spending made by the Plaintiff and Chairperson. Plaintiff then prepared a letter for the Chairperson that outlined the budget problems the Sheriff's office had created and indicated that if the office went over budget, the Chairperson did not foresee additional funding being appropriated for the office.

During the March 9, 2017 Board meeting, Sloan became agitated at the Plaintiff and Chairperson over their insistence that the Sheriff's office stay within its budget. While performing his duties as Sheriff during the board meeting, Sloan stated that he would no longer work with the Plaintiff or Chairperson. Sloan then began yelling and making gestures at the Plaintiff which, according to the Plaintiff, made him and the other Board members believe Sloan was threatening the Plaintiff.

During two subsequent board meetings in June 2017, protesters interrupted and caused the meetings to be cancelled. Prior to the June 13, 2017 meeting, Sloan urged supporters to attend the meeting for "intimidation purposes." *Id.* at 4. Before the meeting started, Sloan held a rally outside the courthouse urging people to come inside and disrupt the meetings. The crowd entered the courthouse and caused the Plaintiff to push through a "hostile" crowd in order to take his seat. *Id.* Sloan began yelling before the meeting began for the Plaintiff and Chairperson to resign, and Sloan demanded his supporters yell louder. At the rescheduled meeting on June 15,

2017, Sloan allegedly paid individuals from a watchdog group to attend the meeting and they immediately disrupted the meeting by saying the meeting was illegal, causing the meeting to end.

In the same month, Sloan released a voicemail from the Chairperson to the public about two individuals who were disrupting meetings. One of the individuals, in response, watched the Plaintiff and Chairperson and posted their location on Facebook. As a result, the Plaintiff and Chairperson resigned due to intimidation and a fear for their families' safety.

Plaintiff claims that this intimidation prevented him from communicating his policy prescriptions for the budget and spending. Plaintiff also claims that Sloan's conduct was committed under color of state law as Sloan was Sheriff and was exercising that role during the board meetings. Finally, Plaintiff claims that as Sloan has final policymaking authority as Sheriff, Defendant Stark County ("Stark County") is liable for Sloan's actions.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal where a Plaintiff fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The facts alleged, plus reasonable inferences therefrom, are taken as true, and the question is then whether on those assumptions the plaintiff would have a right to legal relief." *Bane v. Ferguson*, 890 F.2d 11, 13 (7th Cir. 1989).

**DISCUSSION**

As Defendants have stated in their Motion to Dismiss, for Plaintiff to establish a prima facie case he must establish that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the First Amendment activity was a "at least a motivating factor" in the Defendants' decision to take the retaliatory action. *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). Defendants argue that Plaintiff was not subject to First Amendment protections while on the Stark County Board and that he does not have a plausible claim that he suffered a deprivation. For the reasons that follow, these arguments fail.

**I. Plaintiff has First Amendment protections.**

First, Plaintiff has First Amendment protections of speech while on the Stark County Board. Defendants claim that because Plaintiff is a public employee of Stark County while on the Board, he must pass a two-step test laid out in *Gonzalez v. City of Chicago* that analyzes First Amendment claims by public employees. *Gonzalez v. City of Chicago*, 239 F.3d 939, 940 (7th Cir. 2001); *see also Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) ("The first [inquiry] requires determining whether the employee spoke as a citizen on a matter of public concern. . . . If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.") (citing *Pickering v. Board of Edu. of Township H.S. Dist. 205*, 391 U.S. 563 (1968); *Connick v. Myers*, 461 U.S. 138 (1983)).

However, that test is in some tension with a previous Supreme Court holding that legislators speaking on public policy issues are entitled to First Amendment rights to participate

in legislative functions. *Bond v. Floyd*, 385 U.S. 116 (1966). "The manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy. . . . Legislators have an obligation to take positions on controversial political questions so that their constituents can be fully informed by them." *Id.* at 135–36. Courts have reached different conclusions about whether the *Garcetti* rationale and *Pickering* and *Connick* balancing test should apply to speech restrictions of elected officials. *See, e.g., Werkheiser v. Pocono Township*, 780 F.3d 172, 180 (3d Cir. 2015) (identifying intracircuit tension in the 5th Circuit, noting a *dicta* rejection of the *Bond* exception to *Garcetti* in the 8th Circuit, and surveying district courts that have fallen on either side of the issue). Most of the analysis on this tension is rooted in actions by a state employer that restrict the speech of an employee, rather than actions by another public official that prevent the plaintiff from exercising legislative duties. Still, for example, when the president of a city council ejected a fellow councilmember from a meeting due to his viewpoint on the budget, the Third Circuit found that the matter was properly submitted to a jury for a determination of whether the ejection was motivated by the president's desire to suppress the plaintiff's viewpoint. *Monteiro v. City of Elizabeth*, 436 F.3d 397, 404 (3d Cir. 2006).

In this district, we have treated county board members as legislators subject to the First Amendment protections set forth in *Bond*. *See Hoffman v. Dewitt County,* 176 F. Supp. 3d 795, 811–12 (C.D. Ill. 2016). The Seventh Circuit appears to agree that elected legislative actors are subject to different First Amendment analyses than "public employees" writ large,[2] and in any

---

[2] "Judge Siefert argues that judges are different from 'employees' because they are more akin to legislative actors who are 'ultimately accountable to the voters.' *See Jenevein v. Willing*, 493 F.3d 551, 558 (5th Cir. 2007). However, this conception of a judge's role is improperly limited." *Siefert*, 608 F.3d at 984. *Jenevein* held that elected judges were elected officials not subject to the *Pickering-Garcetti* balancing test. *Jenevein v. Willing*, 493 F.3d 551, 558 (5th Cir. 2007). The Seventh Circuit thus acknowledged some category of differing treatment for legislative actors, and held elected judges were

5

event agrees that any government restriction of public employees' speech must be related to the government's "duty to promote the efficiency of the public services it performs." *Siefert v. Alexander*, 608 F.3d 974, 984–85 (7th Cir. 2010). Here, taking Plaintiff's factual allegations as true, the purpose of Sloan's conduct was to *disrupt* the efficiency of the County Board and Plaintiff's job duties. The Court concludes that Plaintiff was acting in his capacity as a legislator on the Stark County Board in attempting to speak on the budget issue, and the First Amendment protected his right to participate in legislative functions.

Defendants attempt to distinguish Plaintiff from an elected legislator, as he was appointed to the Board. Defendants state that under *Pleva v. Norquist*, since Plaintiff is an appointed member of the Stark County Board (no candidates ran for the position), he is not subject to the First Amendment protections afforded to elected members. *Pleva v. Norquist,* 195 F.3d 905 (7th Cir. 1999) (members of a city zoning board subject to appointment by the mayor and reappointed after a three-year term were not legislators for *Bond* purposes). Although Plaintiff was appointed to the Board, his position is subject to election and not re-appointment, and the Court finds for the purposes of resolving this Motion that Plaintiff retained the First Amendment protections and job duties of an elected member of the County Board, which include a right to participate in legislative functions of the Board.

**II. Plaintiff has a plausible claim to deprivation.**

"Any deprivation under color of law that is likely to deter the exercise of free speech . . . is actionable." *Power v. Summers*, 226 F.3d 815, 820 (7th Cir. 2000)). "The test is whether a person of 'ordinary firmness' would be deterred from exercising his or her First Amendment

---

not eligible for that treatment. *See also Siefert*, F.3d at 992–93 (Rovner, J., dissenting) ("In sum, no Supreme Court decision or Seventh Circuit case has applied a balancing test to the speech of elected officials.").

rights." *Pindak v. Dart*, 125 F. Supp. 3d 720, 751 (N.D. Ill. 2015) (citing *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). In this case, Plaintiff claims that, while acting under color of law as Sheriff, Sloan acted in a way that would deter the exercise of free speech, depriving Plaintiff of his First Amendment rights.

Defendants argue that the allegations of Sloan's actions would not rise to a level where a person of "ordinary firmness" would be deterred from exercising their First Amendment rights. Specifically, Defendants cite *Zitzka v. Village of Westmont* for the proposition that "criticism or the intimidation resulting from being stared and yelled at, may not by itself rise to the level of a materially adverse action." *Zitzka v. Vill. of Westmont*, 743 F. Supp. 2d 887, 917 (N.D. Ill. 2010). However, as the *Zitzka* court explained, "[a] 'campaign' of petty harassment that includes reprimands and ridicule or other 'minor forms of retaliation'. . . may be actionable under the First Amendment if it is enough to deter the exercise of free speech." *Id.* (citing *Massey v. Johnson*, 457 F.3d 711, 720–21 (7th Cir. 2006)). While some of the conduct that Plaintiff has alleged, standing alone, may not rise to the level described in *Zitzka*, including yelling by Sloan and other members of the audience at the board meetings, Plaintiff's further allegations of intimidation provide a plausible claim that he was deprived of First Amendment rights by a "campaign" of petty harassment deterring the exercise of free speech. As Plaintiff has plausibly alleged that he is entitled to relief on this ground, the Motion to Dismiss is denied with respect to the constitutional deprivation allegations.

**III. Plaintiff has a plausible claim against Stark County.**

According to *Monell v. Department of Social Service of City of New York*, a government entity may be held liable on a § 1983 injury claim "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

7

represent official policy, inflicts the injury that the government as an entity is responsible [for] under §1983." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). For Plaintiff to establish that Stark County is liable, he must provide "an allegation that the constitutional injury was caused by a person with final policymaking authority." *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007).

In this case, Plaintiff alleges that Sloan had final policymaking authority over how to keep the peace during the County Board meetings, which were in his official duties. The U.S. Supreme Court stated in *Pembaur v. City of Cincinnati* that "particular officers may have authority to establish binding county policy respecting particular matters and to adjust that policy for the county in changing circumstances." *Pembaur*, 475 U.S. 469, 483 (1986). As Plaintiff has provided sufficient factual matter to show a plausible claim that Sloan adopted an "official policy" to restrict or deter Plaintiff's right to free speech in his capacity as Sheriff, the Motion to Dismiss is denied on this ground as well.

## CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss (Doc. 13) is DENIED.

Signed on this 25th day of July, 2019.

/s James E. Shadid
James E. Shadid
United States District Judge
